UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLIED MECHANICAL SERVICES, INC.,

    Plaintiff,

v.

Case No: 1:16-cv-334

HON. JANET T. NEFF

NATIONAL FIRE AND MARINE
INSURANCE COMPANY,

    Defendant.
_____/

# **OPINION**

This is a diversity action for breach of contract brought by Plaintiff Allied Mechanical Services, Inc. ("Allied") against Defendant National Fire and Marine Insurance Company ("NFMIC"). Allied sues NFMIC for breach of an insurance contract. Count I of the complaint seeks an order compelling NFMIC to participate in the appraisal process described in the contract. NFMIC has filed a counterclaim alleging that appraisal is premature, and asking the Court to find that a particular clause in the insurance contract applies to the appraisal process. (ECF No. 4, Page ID.84.) Before the Court are motions for summary judgment filed by the parties. (ECF Nos. 13, 15.) For the reasons discussed herein, Allied's motion will be granted and NFMIC's motion will be denied.

**I.**

Rule 56 of the Federal Rules of Civil Procedure requires the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine

whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[T]he district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

## II.

NFMIC issued Allied an insurance policy (the "Policy") covering a vacant building located at 2211 Miller Road, Kalamazoo, Michigan. The building was destroyed in a fire. The Policy provides that NFMIC will pay the "actual cash value" for damaged or lost property, which is defined as follows in paragraph E.6:

> d. Actual Cash Value
> . . .
> (1) when damage to property is economically repairable, "actual cash value" means the cost of repairing the damage, less reasonable deduction for wear and tear, deterioration, and obsolescence;
>
> (2) when the loss or damage to property creates a total loss, actual cash value means the market value of the property in a condition equal to that of the destroyed property, if reasonably available on the used market or
>
> (3) otherwise actual cash value means the market value of new property of like kind and quality, less reasonable reduction for wear and tear, deterioration, and obsolescence.

(Policy, ECF No. 12-1, PageID.136.) The parties agree that paragraph (1) does not apply because the damage to Allied's property created a "total loss." However, the parties disagree about whether paragraph (2) or paragraph (3) applies.

2

After Allied submitted a claim for coverage, NFMIC hired an appraiser who determined that the market value of the property was $279,000. The appraiser determined this value by comparing the property to "actual sales of similar properties," and then making adjustments based on "time, location, physical characteristics, and any other factors affecting value[.]" (Brown Letter, ECF 12-4, PageID.208.) After further research, the appraiser also determined that other properties "in a condition equal" to the destroyed property were available for sale on April 6, 2015, the date of Allied's loss. (Brown Aff. ¶¶ 10-11, ECF No. 16-1, PageID.371-72.)

Allied disagreed with NFMIC's valuation of the property. It maintained that there were no properties "in a condition equal to that of the destroyed property . . . reasonably available on the used market," so it relied on paragraph (3), and came up with an actual cash value of approximately $598,000. (Ex. A to Pl's Sworn Statement in Proof of Loss, ECF No. 12-7, PageID.231.) Because of its disagreement with NFMIC, Allied submitted a demand for appraisal under the Policy, which states:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select a competent and impartial umpire. If they cannot agree either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a. Pay its chosen appraiser; and
> b. Bear the other expenses of the appraiser and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

(Policy ¶ E.2, PageID.135.) NFMIC declined to participate in the appraisal process, arguing that the appraisal process was premature because there were "coverage questions" that needed to be

3

resolved, including the proper method to value the property. (NFMIC's Response to Appraisal Demand, ECF No. 12-6, PageID.216.) Allied then brought this action to compel appraisal. In response, NFMIC filed its counterclaim.

### III.

Michigan law requires fire insurance contracts to contain an appraisal provision like the one in the Policy. *See* Mich. Comp. Laws § 500.2833(1)(m). The purpose of this provision is to "resolve the 'amount of the loss' in insurance disputes when liability has already been admitted." *The D Boys, LLC v. Mid-Century Ins. Co.*, 644 F. App'x 574, 579 (6th Cir. 2016) (citing *Auto-Owners Ins. Co. v. Kwaiser,* 476 N.W.2d 467, 467-68 (Mich. Ct. App. 1991)). The appraisal process is a "'substitute for judicial determination of a dispute concerning the amount of a loss,' [and] is 'a simple and inexpensive method for the prompt adjustment and settlement of claims.'" *Kwaiser*, 476 N.W.2d at 469 (quoting *Thermo-Plastics R & D, Inc. v. General Accident Fire & Life Assurance Corp., Ltd.*, 202 N.W.2d 703, 706 (Mich. Ct. App. 1972)). However, "[w]here the parties cannot agree on coverage, a court is to determine coverage in a declaratory action before an appraisal of the damage to the property." *Id.* at 469-70. "Matters of an insurance policy's coverage are generally for a court and not for appraisers." *Id.* at 469. In short, because the appraisal process is a substitute for a judicial determination concerning the amount of loss, "any disputes between the parties other than the amount of loss must be resolved through judicial determination." *Luke v. Home-Owners Ins. Co.*, No. 329433, 2017 WL 239459, at *3 (Mich. Ct. App. Jan. 19, 2017).

**A. Nature of the Dispute**

Allied maintains that appraisal is appropriate because there is no "coverage" dispute to be resolved by the Court. The parties do not dispute that the destroyed building is covered by the

4

Policy. According to Allied, the only dispute concerns the amount of loss, which is for an appraiser to decide. Allied contends that an appraiser will determine whether property "in a condition equal to that of the destroyed property" is reasonably available on the used market, and after doing so, will be able to determine whether to apply paragraph (2) or paragraph (3) in the definition of actual cash value. Allied further contends that this determination is a straightforward one that can be made by applying the "ordinary meaning" of the Policy. (Pl.'s Reply in Supp. of Mot. for Summ. J. 5, ECF No. 20.) Allied argues that the ordinary meaning of "equal" in paragraph (2) is "same," which means that the appraiser must determine whether any properties of the same size, age, geographic location, features, and construction as the destroyed property were reasonably available on the used market at the time of the loss. (*Id.* at 6; Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 6, ECF No. 17.) Allied has acknowledged that finding even one property with all these characteristics, let alone one that was reasonably available on the used market, "is a virtually impossible task." (ECF No. 12-7, PageID.228.) Nevertheless, Allied believes that a plain reading of the Policy requires that such a property exist in order for paragraph (2) to apply. If such a property did not exist on the date of the loss, then the appraiser must determine actual cash value according to paragraph (3).

NFMIC, on the other hand, maintains that the appraisal process is premature because there is a dispute about which definition of actual cash value applies, the one in paragraph (2) or the one in paragraph (3). NFMIC asks for a declaration from the Court that paragraph (2) applies based on its evidence that properties "in a condition equal" to the destroyed property were available for sale on the date of Allied's loss. NFMIC believes that "in a condition equal" means an equivalent physical state. Thus, the dispute in this case boils down to a disagreement about what must be "reasonably available on the used market" in order for paragraph (2) to apply. Allied contends that

5

a property that is essentially identical to the destroyed property must have been reasonably available, whereas NFMIC contends that a comparable property of an equivalent physical state must have been reasonably available. This is not strictly a dispute about the amount of loss. This is a dispute about the interpretation of the contract.

The Court agrees with Allied that the Policy can be applied according to its ordinary meaning, but disagrees with Allied as to what that meaning is. And insofar as the parties disagree about this meaning, the Court can adjudicate this dispute before requiring the parties to participate in the appraisal process. Although it is not a "coverage" dispute in the ordinary sense of that term, it is a dispute that calls for a judicial determination of the meaning of the Policy rather than a determination of the amount of loss. Allied implies that all disputes that are not "coverage" disputes should be addressed by the appraisal process, but the appraisal process has a specific purpose: to determine the amount of loss. *Kwaiser*, 476 N.W.2d at 469. All other disputes must be resolved by a court. *See Luke*, 2017 WL 239459, at *3. A dispute about how a contract should be interpreted concerns "a question of law for a court to determine[.]" *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999) (describing the standard for appellate review). It is not a dispute that can or should be resolved by an appraiser.

### B. Interpreting the Contract

When interpreting a contract in a diversity case, the court applies the law, including the choice-of-law rules, of the forum state. *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 302 (6th Cir. 2008). The insurance policy here has no choice-of-law provision, so the Court must consider the following five factors: place of contracting, place of negotiation, place of performance, location of the subject-matter of the contract, and place of incorporation of the parties. *Id.* (citing *Chrysler*

*Corp. v. Skyline Indus. Servs.*, 528 N.W.2d 698, 702 (Mich. 1995); Restatement (Second) of Conflict of Laws § 188(2) (1971)). In this case, the place of performance, the place of contracting, and the location of the subject-matter of the contract is Michigan. In addition, the parties agree that Michigan law applies, so the Court will apply Michigan law.

Insurance policies are governed by the same principles of contract construction as any other type of contract. *Hastings Mut. Ins. Co. v. Safety King, Inc.*, 778 N.W.2d 275, 278 (Mich. Ct. App. 2009). The policy must be read as a whole to determine and effectuate the parties' intent. *McKusick v. Travelers Indemnity Co.*, 632 N.W.2d 525, 528 (Mich. Ct. App. 2001). The terms of a contract are accorded their "plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 28 (Mich. 2005). A court may rely on dictionary definitions to determine the plain and ordinary meaning of a term. *Hastings Mut.*, 778 N.W.2d at 279. "But contract terms should not be considered in isolation and contracts are to be interpreted to avoid absurd or unreasonable conditions and results." *Id.* at 281.

Allied believes that "condition equal" means, in essence, "identical"; that is, having the same characteristics, including: age, size, construction, location, and features. This interpretation does not comport with the ordinary meaning of these terms. With regard to objects, "equal" means "[h]aving the same measure; identical in magnitude, number, value, intensity, etc." or "[p]ossessing a like degree of a (specified or implied) quality or attribute[.]" Oxford English Dictionary, http://www.oed.com/; *see also* Merriam-Webster, http://www.merriam-webster.com/dictionary/equal (defining "equal" as "of the same measure, quantity, amount or number as another" or "like in quality, nature, or status"). In other words, equal means the same with regard to a *specific quality or attribute*. It does not necessarily mean the same in all respects.

In the Policy, the term "equal" modifies the word "condition." Consequently, equality is required with respect to the *condition* of the property. "Condition" means a "particular mode of being"; e.g., whether something is "[p]roper . . . for work, market, etc." Oxford English Dictionary, http://www.oed.com/; *see also* Merriam-Webster, http://www.merriam-webster.com/dictionary/condition (defining "condition" as "a state of being" or "a state of physical fitness or readiness for use"). Thus, a property in a condition equal to another likely means one that has an equivalent state of readiness or fitness for use. Paragraphs (1) and (3) in the definition of actual cash value provide an additional clue as to what is meant by "condition" in paragraph (2). They provide for a reasonable reduction in the cost of repairs, or in the calculation of the value of new property of like kind and quality, to account for "wear and tear, deterioration, and obsolescence" in the covered property. (Policy, PageID.136.) Wear and tear, deterioration, and obsolescence are attributes relating to the condition of a property. They also impact its market value. In contrast, one does not ordinarily associate features like age, size, location, and construction, with a property's condition. The condition of a property can decline over time, even though its size, location, and construction remain the same. Likewise, if a property is well-maintained and cared for, its condition can remain relatively constant, even as its age increases. Put another way, one property is not necessarily in a "better" condition than another simply because it is newer, larger, made from higher quality materials, or is located in a particular area. Thus, interpreted according to its plain and ordinary meaning, "in a condition equal" refers to equivalence in attributes like wear and tear, deterioration, and/or obsolescence, rather than equivalence in attributes like age, size, location, and construction.

Finally, the phrase "in a condition equal to that of the destroyed property" modifies the phrase "*the* property," which ostensibly refers to the covered property. So construed, the entire phrase, "the market value of the property in a condition equal to that of the destroyed property," serves to clarify that the market value of the covered property should take into account the condition of that property before it was destroyed. Thus, the answer to the question of what needs to be reasonably available on the used market is not "[a] property in a condition equal to that of the destroyed property," it is this: "the *market value* of the [covered] property." This interpretation is different from the one proposed by Allied, but not significantly different from the one proposed by NFMIC. The Court's interpretation does not require an appraiser to identify a specific property that was available for sale on the date of the loss. However, determining a property's market value through the used market necessarily requires that there be information (e.g., sales, listings) about similar properties such that a reasonable comparison can be made. If the covered property is so unique, or the market for similar properties so scarce, that the property's market value is not "reasonably available," i.e., it cannot reasonably be ascertained from the used market, then the Policy allows the appraiser to determine actual cash value by another means: estimating the market value of *new* property "of like kind and quality" under paragraph (3).

Adopting Allied's interpretation would mean that paragraph (2) would almost never apply. Rarely, if ever, would there exist another property with all the same attributes as the covered property, let alone one that is reasonably available on the used market on the date of the loss. The Court will not interpret the Policy in a way that would effectively eliminate this paragraph and lead to an absurd result. *See Hastings Mut.*, 778 N.W.2d at 281.

Moreover, Allied's interpretation is inconsistent with the purpose of the Policy, which is to cover the insured for the value of the destroyed property. The Policy gives NFMIC the option to either pay the value of the lost property or pay the cost of repairing or replacing it. (Policy ¶ E.4, PageID. 136.) It does not require NFMIC to provide a suitable replacement. Under paragraph (2), value is determined by examining the "market value" of the destroyed property. The market value of real property is often determined by looking at the value of comparable properties and making appropriate adjustments based on the differences between those properties and the property being appraised. It does not require a comparison to an identical property, let alone one that is currently available for sale on the market. Indeed, if a comparable property was sold shortly before the date of the loss, that sale would be useful for determining the market value of the covered property, even though the property that was sold is no longer available. It makes little sense for a policy covering the *value* of destroyed property to require that a property with essentially identical features, or in the same condition, as the destroyed property exist for sale on the used market on the date of the loss.

**C. Relief**

Having addressed the dispute over interpretation of the Policy, the Court must consider the specific relief requested by the parties in their respective motions. Allied asks for an order to compel NFMIC to participate in the appraisal process. In contrast, NFMIC seeks an order declaring that paragraph (2), and not paragraph (3), in the definition of actual cash value applies, and instructing the appraiser accordingly. NFMIC relies on evidence from its appraiser that other properties "in a condition equal" to the covered property were available for sale on the date of the loss.

NFMIC's motion will be denied because the Court cannot determine whether paragraph (2) or paragraph (3) applies without resolving a factual issue that is squarely within the ambit of the

appraisal process. An appraiser is in a better position than the Court to determine whether the market value of the destroyed property can be ascertained from the used market. This is not a coverage issue or a matter for judicial determination. The parties agreed to submit to an appraisal process to resolve this type of issue, and their agreement will be enforced. To the extent that the parties disagree about the meaning of paragraph (2), this Opinion provides guidance on that issue.

NFMIC also asserts that it is not required to participate in the appraisal process because Allied has not submitted an adequate proof of loss. NFMIC contends that Allied's proof of loss is based on an improper assessment of actual cash value under paragraph (3) rather than paragraph (2); thus, according to NFMIC, there is no dispute to submit to an umpire. The Court rejects this argument because the parties clearly disagree about the amount of loss and Allied has requested an appraisal. Any further disputes about the amount of loss should be resolved through the appraisal process.

Finally, Allied's motion will be granted because an appraiser is capable of determining actual cash value based on the ordinary meaning of the terms in the Policy. There is, thus, no genuine dispute that Allied is entitled to an order compelling appraisal.[1]

An order will enter consistent with this Opinion.

Dated: April 10, 2017      /s/ Janet T. Neff
                                                JANET T. NEFF
                                                United States District Judge

---

[1] For the sake of clarity, the Court has not found that NFMIC breached the terms of the Policy, as Allied alleges in Counts I and II of the complaint. The parties have not asked the Court to make a finding on that issue; thus, the Court expresses no opinion as to whether Allied is entitled to any other relief requested in the complaint, such as damages or penalty interest.